The next case on the call is Agenda Number 2, Case Number 122830, People v. Kimble. Mr. Sabula, if you're ready, you may proceed. Good morning. May it please the Court, Counsel. I'm Assistant Attorney General Michael Sabula on behalf of the people of the State of Illinois. This appeal is about whether the State will be allowed to continue its prosecution of defendant for his repeated sexual abuse of a 9-year-old girl. The appellate court's ruling that the trial judge erred by declaring a mistrial and that the Double Jeopardy Clause prevents the State from continuing its prosecution is wrong for a number of independent reasons. To begin with, the defendant is prevented and prohibited from raising a double jeopardy argument because the record shows that he consented to a mistrial in two separate ways. First, the defendant himself moved for a mistrial on each of the first two days of trial. Second, and independently, the defendant did not expressly object on the third day when the trial court declared a mistrial. Your Honor, this was a very short trial. As I mentioned, it only lasted three days. And throughout that time, the defendant demanded a mistrial. On the first day of trial, the victim testified about how the defendant had sexually abused her for a period of many months. Then her little 7-year-old sister testified about how she, too, had been sexually abused by the defendant. At that point, the defendant moved for a mistrial, arguing that the jury had been tainted by the little sister's testimony. The court denied that motion. The trial continued the next day. The next day, the State played a videotape of the defendant's interview with police, during which time he made a number of very damaging, inculpatory comments, including admitting that he slept in bed with these little girls all the time, said that the victim was a very honest, would never lie, and said that he may have touched the girls on their vaginas accidentally. At the end of the playing of that videotape, the defendant again moved for a mistrial, saying that the jury had been tainted by an inadvertent comment by the interviewing detective that the defendant had asked for a lawyer. The trial court denied that motion, and then very shortly thereafter, the parties rested their cases. So even before this case was ever submitted to the jury, this defendant had made clear that he wanted a mistrial. He did not want this jury to decide his fate. He wanted a new trial with a different jury. And as the cases we cite on pages 13 through 15 of our brief, in these circumstances, the law is clear. This Court, other State Supreme Courts, Federal Courts of Appeal have held that a request for a mistrial constitutes consent to a subsequent declaration of a mistrial. Now, the defendant has argued that this rule should not apply in this particular case because his grounds for a mistrial were different than the trial court's. But he does not cite any case law for that argument. In fact, that's not what the case law says. Cases we cite, like this Court's decision in Mosley, other State Supreme Courts' decision in Knight and Saunders, hold that this rule applies even when the Court's grounds are different than the defendant's. And that makes sense. The Double Jeopardy Clause protects the defendant's right to have his case decided by the very first jury. But it is true, Counsel. Isn't it that the cases you cite, the grounds for the mistrial that were indicated by the defendant earlier, were closer to what the judge ultimately relied upon than in this case? Isn't that true? I think it depends on the case. I would say this Court's decision in Mosley, I would admit, they were somewhat closer. They both centered on the appearance of an article in the Chicago Tribune that revealed details about the case. The defendant argued that was prosecutorial misconduct. The judge, it's a little unclear. The judge seemed to think there was a risk that the jury might seek out that article. Is the fact that you're making this consent argument based on the earlier motion for mistrial, is that dispositive of your position or is it enough that the defendant didn't object to the mistrial? I think they're two separate arguments, Your Honor. I think they're independent arguments, is that the fact that this defendant moved for mistrial, that's a statement by the defendant that he wanted to give up his double jeopardy rights. He did not want this jury to decide his fate. And so when the court declared a mistrial on the third day, the court was granting him the relief that he wanted, which was a new trial with a different jury. The cases we cite, again, Saunders and Knight, which I think are much different in terms of what the defendant wanted and what the trial court ultimately relied on, that's the reasoning in those cases, is that even though your grounds are different, ultimately you're getting the relief that you requested. And tied into that, Your Honor, I think is a very important point, which we raise in our briefs, which is that I think looking in the background of these decisions, we can be absolutely certain just based on our common experience, if this jury had continued to deliberate and rendered a guilty verdict, this defendant absolutely would have appealed and said a mistrial should have been granted on the first or second day or probably even the third day of trial. And we raise that in our brief, and I think it's telling that defendant does not disagree with that. He doesn't dispute that position. He doesn't give up his earlier mistrial motions, but he can't create such a no-lose situation. So our first argument is that by requesting these mistrials, he consented to a mistrial. He got the relief he told the court he wanted. Now, separate and independent from that, still on the issue of consent, is that he did not expressly object on the third day when the judge announced that she was declaring a mistrial due to jury deadlock. Now, the defendant at various times has raised two completely contradictory arguments in this respect. On the one hand, he said, well, I did object to a mistrial. And on the other hand, especially in briefing before this court, he said I didn't have an opportunity to object to the mistrial on the grounds of jury deadlock. But the record shows and the case law shows that neither one of those arguments are true or accurate. As I mentioned, the jury began deliberating in the morning of the third day. Late in the day, the judge called the parties in the court and said that she had just received a note from the jury saying that they were deadlocked. She then told them this is actually the second time they'd said they were deadlocked. They'd said a similar thing a few hours before, and she had instructed them through the bailiff to keep on deliberating. So by mentioning that, obviously there was a chance that the jury may need to be discharged. It should have been apparent to all the parties. No one objected at that time or argued that they should be given more time. Instead, the judge called in the foreperson. She took her time. She questioned him about the sequence of deliberations. And she specifically said, would it help if you were given more time to deliberate? The foreperson said, no, we've discussed that and we're not going to change our minds. More time would not be helpful. She then sent the foreperson back so that she could discuss the issue with the parties and make a decision. At that moment, given what the foreperson had said, it should have been obvious that if the defendant wanted the trial to continue, he needed to expressly object. But he didn't. It was actually the prosecutor who first spoke up and said he characterized the jury as, quote, seeming to be deadlocked, completely deadlocked. And he mentioned specifically that they might need to be discharged. So, again, that's really calling out for the defendant to disagree with that, to take a position that, no, we should let them continue deliberating. What did the defendant do? He didn't disagree. He expressly agreed with that characterization of the jury. Now, there was some discussion of potential alternatives to a mistrial. It was the prosecutor who mentioned that even though the jury appeared to be completely deadlocked, as a procedural matter, the court still had discretion to give them a prim instruction. Defendant, on the other hand, said that instead of giving a prim instruction, the jury, the court still had discretion to tell the jury just to come back in the morning. But what's key at that point is the prosecutor then emphasized he was not saying that those alternatives were the right method. In other words, he was not disagreeing with a mistrial, which, again, was another opportunity for defendant to disagree and to make some kind of argument that either a prim instruction or telling the jury to come back in the morning were the only two options. But, again, he didn't do that. He remained silent, and he continued to remain silent as the judge said that she was not going to pursue those alternatives. She said she was concerned about the jurors' anger, the level of their anger, and she mentioned the loud voices she had been hearing back in the jury room. And so she called the jury back into the courtroom. Defendant, again, remained silent. The judge thanked the jurors and discharged the jury. And I think what's also key is what occurred after the jury was discharged. I think, you know, as a former trial lawyer, all of us in here that have any trial experience, if you intended to argue that a new trial were barred by double jeopardy or the charges should be dismissed, what you would do when the jury was dismissed is you would immediately ask for a briefing schedule. You would tell the judge, I need 14 days, 30 days to get my motion on file. Defendant didn't do that at all. What did defendant do? Defendant discussed scheduling the new trial, and defendant asked for a status hearing in 30 days. You were saying that the defendant asked for a status hearing after the judge declared a mistrial numerous times. It was actually the state that asked for the status. Isn't that correct? And that defendant didn't do that? I think the sequence was after the jury was discharged, the prosecutor emphasized, again, we want a trial date, Your Honor. Right. And we want a trial date. But the defendant didn't. I think the issue was that the defendant asked for a status date in 30 days, and he explained that the reason he wanted the status date in 30 days was because he needed to issue subpoenas in advance of the trial. He didn't ask for 30 days. That was after the state asked for the status date. The state specifically asked for the trial date. It was the defendant who asked for a status in 30 days so that he could have time to issue subpoenas in advance of a trial. The court agreed to that 30 days so the defendant would have time to issue subpoenas in advance of the trial. And the court said that at that status hearing, after the defendant had an opportunity to subpoena the witnesses he wanted for trial, the trial date would be set at that time. So all of the discussion was about trial date. The status date was picked enough time to expire to give the defendant time to issue subpoenas for trial, get ready for trial. There was no discussion of I need a briefing schedule or I intend to file a motion to dismiss or any kind of double jeopardy argument. And this court in Camden said that discussions of trial scheduling shows that the double jeopardy argument was just an afterthought that developed well after the discussions. And I think that's the case here. Counsel, I have a question. Do we ignore the fact that the defendant agreed with the state that the judge should give the jury a prim instruction? How do we factor that into the equation along with the fact that he did suggest, defense counsel did suggest that they bring the jury back tomorrow? Correct, Your Honor. If I could deal with that in reverse. So the suggestion of defendant that the jury should be brought back in the morning, defendant has never argued that that constitutes an objection. The appellate court did not rely on that at all. There's no case law anywhere that would say that suggesting that the jury be brought back the next day is enough. In fact, on pages 15 through 16 of our brief, we cite cases that deal with very similar issues where, and tied into the prim issue too as well, Your Honor, where courts have said, federal courts of appeals have said that asking for a prim instruction, asking that the jury be re-instructed on the burden of proof, telling the judge, let's go with an alternate juror, telling the juror I prefer that the jury continue deliberating, telling the judge I think the jury can continue deliberating. We cite cases in all of those fact patterns. What have courts said? That's not enough. Courts have said we need an express objection to a mistrial. And the reason for that, Your Honor, is, you know, we've discussed a lot of bright-line rules this morning. This is exactly the kind of situation where we want a bright-line rule. We want a very simple bright-line rule. You have to expressly object. That's the smallest burden possible on the defendant. Just say I object. You can even present some argument of why you think the jury might be allowed to continue deliberating. Wasn't the idea to bring the jury back the next day sufficient? No, Your Honor, and for the reasons I just explained. There's no case law that would support such an argument. The case law that examines it has rejected that. And because we want a bright-line rule, we don't want any kind of ambiguity. You know, I think, you know, things like asking for a prim instruction, they're not incompatible with an understanding that the jury appears to be deadlocked. You can ask for a prim instruction or suggest, as occurred in this case, the prosecutor, suggesting, even though he characterized the jury as apparently to be completely deadlocked, he suggested you could still, it's still within your discretion to give a prim instruction. It wouldn't hurt. I think the jury is deadlocked, but it wouldn't hurt. As long as we're here, let's give a prim instruction. But aren't you suggesting that you, by making the request for a prim instruction, that you don't consent to the judge declaring a mistrial? When you say, come back tomorrow, I'm not consenting to the declaration of a mistrial. I don't think so, Your Honor. I would say, again, not to harp on it, the case law has completely rejected that. I'd say it's clearly not an express objection. The most you can say, the most you can say in the defendant's favor is there's something implicit in asking for prim or there's something implicit. We reject that for reasons we discussed in our brief. There's reasons you might suggest a prim instruction or you might suggest coming back in the morning but still understand that, look, the jury is deadlocked and there's no, there's nothing wrong or there's nothing in error to declaring a mistrial, but we're suggesting maybe give it a little more time. That's not the same thing as saying I absolutely object to a mistrial. Also, aren't you kind of suggesting form over substance, though? I mean, if there is some sort of opportunity in the trial court going back and forth, that would lead you to believe that there's not a consent, but you want those words, I object. I don't know that we're suggesting a magic words test, Your Honor. What is it if he says, no, I want your trial court to come back or he agrees with the prim request? To take Your Honor's argument on its own terms, Your Honor, I think I take your honor to be suggesting that in certain contexts, certain words that are less than an objection should be read as actually objecting. And so in certain contexts, asking that the jury to come back in the morning should be said, read as an express objection to a mistrial. As I've tried to say, we believe that these things are not incompatible. But, however, if Your Honor is suggesting that there's something implicit in that, then I think that's also what that's really saying is you have to look at the entire context. And so let's look at the entire context. Three-day trial. The defendant moves for mistrial on day one. He moves for mistrial on day two. He does not present any strong kind of argument. At the most, Your Honor, he says maybe let's let them come back in the morning. And then, as I mentioned earlier, what does he do the moment the jury is dismissed? He does not say I want 30 days so I can file my brief. What does he do? He talks about scheduling. The only specific request is that the status be set in 30 days so that he can issue these subpoenas. So even taking Your Honor's question on its own terms and taking the argument that I expect the defendant to make,  that's a context, at best, a context-dependent argument. And the context here shows a defendant who not only was accepting of a mistrial but had been demanding a mistrial and whose actions afterwards were consistent with someone who did not intend to raise a double jeopardy argument. So for these two independent reasons, Your Honor, we believe he's consented. He repeatedly requested a mistrial and he did not expressly object to a mistrial. I would again emphasize, if I may, Your Honor, that there is no case law supporting these arguments the defendant is making. The case law is on our side on both of these consent arguments. But to the extent Your Honors have some concerns about the issue of consent, I would note the final independent reason for reversing the appellate court, Your Honor. This is a two-step process. So even if this court were to find that the defendant objected or he did enough to say he objected or if the court declines to address that particular issue, the appellate court's decision still should be reversed because the trial court made a reasonable determination that this jury was deadlocked. This court, the United States Supreme Court, have consistently emphasized that we must give trial judges very broad discretion in deciding whether or not a jury is deadlocked. So the defendant faces, has to carry a very heavy burden. He has to show that this judge's decision in announcing a jury deadlock was completely unreasonable, that no reasonable person could have agreed with that. And there's an important practical reason for such a high standard, and that's, of course, the trial judge is in by far the best position to understand the case, the environment, the atmosphere of the trial, the complexity or simplicity of the trial, and determine can this jury really reach a unanimous verdict without coercion. Would giving them more time help? There's obviously an important policy reason. The United States Supreme Court has discussed this at length, and that is if we second-guess judges in this particular area of jury deadlock, we would really put pressure on judges perhaps to force juries to continue to deliberate, which would obviously lead to coercive verdicts in some cases. So I think it's telling that the United States Supreme Court has recently said that it has never overturned a trial judge's determination that a jury is deadlocked, and I think the same is true of this court. And that should continue in this case, because all of the relevant factors show that this judge made a reasonable determination. If I can just briefly touch on them. Number one, the jury said that it was deadlocked, and courts agree that is the most important factor. Second, this is a very brief trial, two days of testimony, presented a very straightforward issue. Was this little girl telling the truth? The defendant himself has said this is purely a credibility contest. All of us in our everyday lives make credibility determinations all the time, do them very quickly, frankly, usually within a few seconds, if not minutes. So it was within reason for this judge to think that five hours was enough time. Third, the record shows this judge did not act hastily. She talked to the parties about what they thought should happen. She called the foreperson in. The foreperson said that they'd been deliberating, they'd been at deadlock for about five hours, that nobody had changed their votes for several hours. She specifically asked, would it help if we gave you more time? And the foreperson specifically said, no, we've discussed that, and more time would not cause us to change our minds. And finally, Your Honor, this case does present the risk of a coerced verdict. Obviously, a long-term child sexual abuse case presents very sensitive issues, which can cause emotions to run high. This jury had already been told once, as you see from the record, they'd already been told once to continue deliberating, and they still had not been able to reach a verdict. And the judge herself, in explaining her decision, specifically mentioned her concerns about the level of anger she noticed from the jury and she was concerned about with the jury, and mentioned hearing some loud voices, some raised voices back in the jury room. So while a defendant in this particular case is focused on the judge's duty to help the jury reach a verdict, the judge has an equally important job to make sure that that is not a coerced verdict, and that's what she clearly was trying to safeguard against here. So unless there are any further questions, Your Honor, I'll step down at this time. Thank you.  Ms. Skelnick. Good morning, Your Honors. Good morning, Counsel. May it please the Court. My name is Josette Skelnick. I'm here with the State Appellate Defender on behalf of the defendant appellee, David Kimball. In 1824, the United States Supreme Court decided the case of United States v. Perez. That case is a benchmark case. Justice Stevens referred to it as the fountainhead of a case that addresses when it's proper for a trial judge to declare a mistrial in instances of jury deadlock. That case has been cited continuously, quoted continuously, still relied on today, in fact still relied on by the U.S. Supreme Court. In that case, Justice Story directed that the power to declare a mistrial ought to be used with the greatest caution under urgent circumstances and for very plain and obvious causes. And the reason for that is because of the importance of the right that the Double Jeopardy Clause protects. And I think we should take a look in this particular case at what happened in this case. It took almost two years for this case to come to trial. The discovery from the State dribbled in bit by bit, piece by piece. The pretrial motions by the State dribbled in bit by bit. A lot of the information was delayed until right before trial. The defendant incurred a substantial expense in defending against this trial. He incurred and experienced undoubtedly stress and anxiety. Based on what happened during the jury deliberations, the defendant determined that there was a possibility that the jury was favorably disposed toward him and he wanted the case to continue to a verdict. He has a right under the Double Jeopardy Clause to a verdict from the jury he has selected to determine his fate and who he thinks might be favorably disposed toward him. And that right cannot be abridged unless he asks for a mistrial, consents to a mistrial,  the appellate court found that none of that occurred here and they correctly found that. The State argues that the defendant consented, expressly consented to a mistrial by moving on two prior occasions for a mistrial on completely different grounds, not on the basis of jury deadlock. I have a hard time even following that logic. But if you follow the State's argument to its conclusion, then what would happen if the defendant made a motion for mistrial the first day of trial? Judge denies it. The jury is deliberating five hours and not coming back with any verdict. Could the judge at that time say, you know what, defense counsel, you requested a mistrial earlier in the trial and I'm going to go ahead and grant it now. And if the defendant then said, no, Your Honor, I want the jury to continue to deliberate, has he expressly consented because on an earlier day, under different circumstances and for different reasons, he's requested a mistrial? Did the defendant expressly object to the mistrial? Did he here? Yes. I would say yes. How? The State continues to ignore the fact when the issue of jury deadlock came up, the defense attorney said, Judge, I agree with the State. Let's give them a crim instruction. Or you could ask them to go home and come back tomorrow. But you could do both. You could do both. But those are the only two viable alternatives. How is he saying when he's saying these are the only two viable alternatives that I agree? I agree. Is that an express objection or an implied objection? It's an objection. Did he say objection? He didn't say objection, but he made it clear that he wanted to continue to a verdict. He wanted the jury to continue to a verdict. Well, I'm just thinking back to my days as a trial judge. There's objecting and then there's objecting, right? I mean, there's arguments made as to what should be done, but a judge doesn't give the rulers for openings and rulings for openings. So he gives the ruling and said, I'm going to grant a mistrial. Isn't that the time to preserve the record in saying I object? And if you don't have to expressly object, couldn't defendants just lay in the weeds and say, hey, give a crim instruction? It's not given. The judge orders a mistrial, and now you say, okay, double jeopardy attaches, where the judge did not have an opportunity in that case to say, okay, well, I've reconsidered your arguments. I see you're objecting to this. Let's do it your way. I think you're ignoring the context of what happened here. I don't think there's any doubt that this judge knew that the defense wanted to continue to a verdict. In fact, the state in its motion or response, objecting to the defense motion to bar reprosecution, the state argued. Well, the defendant consented. The judge never found. The judge didn't say, what do you mean you're filing a motion? I thought you agreed to this. The judge said, I'm denying the motion because I find there's a manifest necessity. The judge knew. The judge doesn't have to be told. This is a seasoned trial judge. This judge does not have to be told in addition to the only alternatives are to prim the jury or have them come back, continue to deliberate to a verdict. The judge does not have to be told. And, oh, by the way, if you do grant a mistrial, there are double jeopardy implications. What about the discussion about the subpoenas after the mistrial had been declared? Did the defense talk about a need to get subpoenas out? The defense did say that, yeah. Why would you need subpoenas if you didn't consent to a mistrial? I think at that point the defense was just thinking out loud. It's a situation where he's getting his ducks in a row. He certainly didn't do anything after that date. If you compare this case to, for example, Camden, which the state relied on in its brief, very heavily relied on, in People v. Camden, the defense attorney when there was an issue arose about possible jury bias. The defense attorney said nothing, did nothing, said nothing, let the judge question the juror, call the other side, offer the defense an opportunity to question the juror. The defense never objected to anything the judge did after the judge declared a mistrial. That attorney waived his defendant's speedy trial demand, moved for substitution of judge, agreed to a trial setting, did everything inconsistently with the assertion of a double jeopardy right. I think the one statement did not undo his desire to proceed to a verdict. But an express objection certainly wouldn't. If there had been an express objection here, we wouldn't be here. I think we would be here, Your Honor, because this trial judge believed that there was a manifest necessity for the mistrial. So we would be addressing that question. Should the state's suggestion that if the defendant had been convicted, we would be here or you might be up on appeal for the denial of the motion for mistrial, does that factor into our decision here at all? No. It's complete speculation. And quite honestly, I thought about if I got this case after a conviction, I may be arguing that the state didn't prove him guilty beyond a reasonable doubt. And this is a case where, as the appellate court said, the credibility issues were not simple. The credibility issues were anything but clear. This was not a simple trial in terms of the issues the jury had to decide. It wasn't a short trial. But you certainly would have argued also the denial of the motion for mistrial, would you not, on appeal? I can't say that I would or wouldn't, Your Honor. I mean, there were issues, for example, with the issue of the inadvertent comment about the attorney. The judge immediately sustained the objection, told the jury to disregard it. It would be difficult in that kind of situation to even raise that kind of issue. But I think to speculate on what would have happened had the judge not precipitously declared a mistrial, I think is just not a relevant consideration. The other thing that the state has not considered, at least in the oral argument, is that when the judge refused to give a prim instruction, part of her reasoning for refusing to do that was the fact that she had spoken to the jury two hours earlier without telling any of the parties and told them to keep deliberating. So based on the fact that they had continued for two more hours without reaching a verdict, she decided that a prim instruction would have been no use. The state had cited in its brief McLaurin and Johnson as controlling precedent from this court for the proposition that there was no indiscretion by the judge in doing that. But those two cases, in fact, show exactly why they're distinct because in those two cases the jury actually continued to a verdict. That's the result the defendant was trying to accomplish here. So for the judge to find that it would have been futile to either give a prim instruction or to give the prim instruction and return the jury the next day was based upon her earlier ex parte communication with the jury, which was improper and which played a big role in the appellate court's determination. Was that merely an indication that the bailiff should say continue to deliberate? Is that the substance of the ex parte communication? What happened was the jury asked to see the video again. Apparently when they returned to the jury room, they told the bailiff we're at an impasse. The bailiff then went to the trial judge, said the jury has informed me that they're at an impasse. And she said tell them to continue to deliberate. And then he went back without. So that's the sum and substance of the ex parte communication is continue to deliberate. Correct. But it was what played a factor in her decision that a prim instruction would not make any difference. And back to the prim instruction for a minute. The judge responded I am fearful, folks, if I do that, folks, prosecutor, defendant, right, both wanting the prim instruction, that you're going to have some extremely angry jurors. There has been some very loud voices back there for a period of time. I think it would be futile to do that. Therefore, I would decline. So the judge had more information than just time, right, that went into the assessment. Well, first let me say I don't know that that reading with the status reading is necessarily correct. Certainly she did indicate she wasn't going to give a prim instruction. One, I think under the circumstances that was completely unreasonable. It was 4.30 in the afternoon. There was no reason. Both parties asked for the prim instruction. The jurors had moved in different directions. So there was no reason. It was unreasonable not to give the prim instruction that day. But I also think that that colloquy is not necessarily the judge saying I'm not going to give a prim instruction, I'm not going to have them return the next day, and I'm going to declare a mistrial. Certainly she wasn't going to give the prim instruction. But I don't think it necessarily means that she was ‑‑ it means that she didn't want them to come back the next day. What she described as anger was anger. She thought they would be angry over the possibility of having to leave and come back the next day. Not necessarily anger if they were asked to continue to deliberate that day with a prim instruction. And with respect to the express objection argument, as I'm looking at the, again, the transcript again, I'm trying to understand your argument that it was expressed. Both the state and defense counsel asked for a prim instruction. The judge says I'm not going to give it. And it would be futile. Just what we were talking about. The prosecutor says understood, judge. All right? I understand you're not giving the prim instruction. Even though a minute ago with defense counsel I agreed that a prim instruction should be given, and the defendant doesn't respond. Stands mute to the fact that a prim instruction will not be given when the state, who agreed with the defense counsel moments earlier, says understand. And now the mistrial is granted and there's no need to object in those circumstances? Defense counsel had already made it clear that his position was that the only two alternatives, the only two viable, the only two reasonable alternatives were to give the jury a prim instruction and have them continue to deliberate or have them come back the next day or both. And, again, I don't think it's necessarily the case that the judge said I'm not going to prim them. She said I'm not going to have them come back tomorrow. But I don't think it's all that clear that the judge was refusing to even give the prim instruction until she called the jury out and discharged them, at which point the defense attorney, what was the defense attorney to do at that point? In fact, there's recognition by other cases that when the jury comes out and the judge declares a mistrial in front of the jury, that it could be taken negatively toward the defense if the defense attorney says, I object, Your Honor, make them continue to deliberate, that they're going to treat that as something that the defense caused them to do. But the defense counsel could have requested a sidebar and gone and said to the judge, I don't want to show up at the commission. In this particular case, Your Honor, the jury was discharged and the judge then declared a mistrial. But at that point, the defense counsel could have, whether the jury's in there and they've been discharged and they don't want to have a negative influence, could have approached the bench, couldn't they, with counsel and said, please note my objection for the record that that's a mistrial? I don't know that it would have been of much effect at that point since the jury had already been discharged. And my reading of the record is they weren't even in the room after that they were released. So I don't know that it would have been of any effect for the defense attorney at that point to say anything. The only case that I have seen where a court said, asking for a prim instruction, and again I think the defense attorney here did more, said I think that's the only alternative, prim instruction, have them come back. The only case I'm aware of where a court expressly said that a prim instruction is not sufficient to preserve a double jeopardy objection is the First District's decision in People v. Escobar. Seventh Circuit said the First District is completely misreading federal precedent, United States Supreme Court precedent. The United States Supreme Court has never held that in order to preserve your double jeopardy rights, you not only have to make it clear that you want to continue to a verdict, but you have to say I expressly object on double jeopardy grounds. And that is what the Second District recognized and that is what the state is asking that we require. Not only that you make it clear that you want this jury to continue deliberating, but that you remind the judge that there are double jeopardy implications. Again, I think that's wholly unnecessary. I would like to make a point also on the state I assume is referring to the let decision in its argument when it says that the United States Supreme Court said that reviewing courts should give judges a great deal of discretion in determining whether there's a deadlock jury. That's not actually what that let decision said. In let, all that the court said was that under the federal habeas rules for a state prisoner, we cannot second guess whether the Michigan, in that case the Michigan Supreme Court, reasonably interpreted the law. They said it might have been an incorrect interpretation, but our role is only to determine whether it's a possible interpretation. In fact, they suggested that in that particular case, which has some similar facts, that it was wrong for that judge to declare a mistrial. So that case does not stand for the proposition that a trial judge has unlimited discretion. In fact, manifest necessity means urgent, imperious. The judge has to exercise sound discretion, not just some discretion. And in this case, the judge did not exercise sound discretion. She refused to consider reasonable alternatives that both parties requested. She based her decision on prior ex-party communications with the jury. The defendant made clear that his desire was to continue to a verdict with this jury. It was not a hopelessly deadlocked jury. They had made moves back and forth in both directions. So it wasn't a case either where the defending consented or where there was a manifest necessity for the mistrial. The appellate court recognized that, and we would ask your honors that you affirm the appellate court. Thank you, Ms. Stelmich. A few comments, if I may, Your Honor, on the argument you just heard. As to the issue of whether the previous motions for mistrial constitute consent, counsel suggested the situation had changed at some point. She doesn't explain how the situation changed or why the situation changed. There were only two pieces of evidence that were main pieces of evidence that were presented after the initial motions for mistrial. One was the defendant's highly damaging interview, which, again, he said a number, I won't repeat them, but a number of very bizarre and inculpatory comments about young girls. The other piece of evidence was a stipulation in which the victim explained the sort of emotional pain that she had gone through through this time. So the only evidence that was presented was damaging to the defendant. The situation hadn't changed. And, of course, if the situation had changed, the defendant should have just made that clear. I think counsel presented a hypothetical about what would happen if someone made an initial motion for mistrial and then the judge wanted to hold them to it. Well, the answer is very simple. The defendant would just say, I withdraw that motion for mistrial, and I want the jury to continue. So the hypothetical has a very simple answer. You just withdraw your original motions. And I think it's very telling. I think the game's been revealed here is that even now, counsel won't withdraw those earlier motions. Counsel says it's speculation about whether they would proceed with those earlier motions on appeal, but it's not speculation. It's a legal question. Does the defendant believe that those earlier motions were viable? And since counsel won't withdraw them, I think that shows the defendant is trying to create a no-lose situation for himself. Defendant has suggested on the issue of whether or not he objected that it was the judge's comments were not clear about what the judge wanted to do. I think the record obviously shows it was clear that a mistrial, there was a potential for a mistrial. And when the judge explained that the alternatives that were discussed were futile, she was making clear that she was not going to pursue those alternatives and that she was declaring a mistrial. So certainly even before the jury was called back in, it was obvious what the judge was going to do. Even if it wasn't, as questions alluded to, all defendant had to do was request a sidebar. That's exactly what this court held in Camden. Request a sidebar, explain your position to the court. As to the print instruction, counsel said that the judge relied on her earlier ex parte communication as a reason for not giving a print instruction. It's completely not accurate. The only time the judge mentioned the ex parte communications was when she first brought the parties into court. The very next thing she said was, I'm willing to do whatever it takes. I'm willing to tell them to return in the morning if that's what it takes. She then called the foreperson in. The foreperson explained that more time would not be helpful. And then the judge even then opened it up for the parties to make suggestions. So the idea that the judge at all relied on this ex parte communication as a reason for declaring a mistrial is absolutely incorrect and not supported in any way by the record. In terms of ex parte communications, that's been rejected by this court in Johnson & McLaren. Defendant provides no reason for this court to overturn those decisions. She talks about the prejudice here being the idea that the ex parte communication prevented the jury from reaching a verdict. But in Johnson & McLaren, this court upheld convictions. So if that's not prejudice, allowing the court to continue its prosecution certainly cannot be. And again, on the issue of deadlock, counsel presents no reason to believe that this judge did not act reasonably. The jury specifically said they were deadlocked, specifically said that more time would not be helpful. This was a straightforward issue. She took her time. She specifically mentioned the juror's anger and her concerns in that regard. So even if this court has concerns about the issue of consent, it should uphold the judge's discretion and hold that the judge acted reasonably by declaring a mistrial. So unless there are any questions, we would ask this court to reverse the appellate court's judgment. Thank you. Thank you. Case number 122830, People v. Kimball, will be taken under advisement as agenda number two. Mr. Cibula, Skellig, we thank you for your arguments this morning. You are excused.